IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

---

CONTINENTAL CASUALTY COMPANY,

Plaintiff,

v.

THORNTON LAW FIRM LLP,

Defendant.

Case No. 1:21-cv-10067

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Continental Casualty Company ("Continental"), for its Complaint for

Declaratory Judgment against defendant Thornton Law Firm LLP ("Thornton"), alleges on

knowledge, information, and belief as follows:

## NATURE OF THIS ACTION

1.       Continental brings this action to obtain a judicial determination and declaration

with respect to the rights and obligations of the parties under Massachusetts Lawyers

Professional Liability Policy No. 268040812 issued to Thornton for the **policy period** of

September 27, 2016 to September 27, 2017 (the "2016 Policy") and Massachusetts Lawyers

Professional Liability Policy No. 268040812 issued to Thornton for the **policy period** of

September 27, 2017 to September 27, 2018 (the "2017 Policy") (collectively,  the "Policies").[1]

True and correct copies of the 2016 Policy and 2017 Policy (except for the applications) are

attached as Exhibits 1 and 2, respectively.

---

[1] Words in bold are defined in the Policies.

2.       An actual, ripe, and justiciable controversy has arisen between the parties

regarding their respective rights and obligations under the Policies.

3.       Thornton seeks coverage for attorneys' fees and expenses incurred as a result of

an investigation conducted by a special master into the accuracy and reliability of information

submitted by Thornton in support of a fee award in a case pending before this Court captioned,

*Arkansas Teacher Retirement System v. State Street Bank and Trust Co*., No. 11-cv-10230 (D.

Mass.) (the "Underlying Lawsuit") (the investigation is referred to here as the "Special Master

Fee Investigation").  Thornton also seeks coverage for amounts paid to the Court to fund the

Special Master Fee Investigation.

4.       Continental seeks a determination and declaration by this Court that it has no duty

to defend or indemnify Thornton for the Special Master Fee Investigation because:

     i.       the Special Master Fee Investigation is not a **claim** "by reason of an act or

omission in the performance of **legal services** by the **Insured**" as is required

to trigger the Insuring Agreement of each of the Policies;

     ii.      the Special Master Fee Investigation does not trigger coverage under the

Policies because there is no possibility of an award of covered **damages**; and

     iii.     The Intentional Acts Exclusion of each of the Policies bars coverage for the

Special Master Fee Investigation.

5.       In the alternative, Continental seeks a determination and declaration that there is

no coverage for fees incurred by Thornton prior to the tender of the Special Master Fee

Investigation.

## THE PARTIES

6.      Plaintiff Continental is a corporation organized and existing under the laws of the State of Illinois and maintains its principal place of business in Chicago, Illinois.  Continental legally transacts insurance business in the State of Massachusetts and within the geographical jurisdiction of this Court.

7.      Defendant Thornton is a limited liability partnership organized and existing under the laws of Massachusetts, with an address at One Lincoln Street, 13th Floor, State Street Financial Center, Boston, Massachusetts 02110.  Thornton is the **Named Insured** under the Policies.  No partner of Thornton is a citizen of Illinois.

## JURISDICTION AND VENUE

8.      The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  Diversity jurisdiction exists because there is complete diversity of citizenship between Continental and Thornton, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, as Thornton had demanded that Continental pay more than that amount.  The Court has personal jurisdiction over Thornton, because, among other things, its place of business is in this district.

9.      An actual controversy within the meaning of 28 U.S.C. § 2201 exists between the parties concerning their respective rights, duties, and obligations under the Policies.

10.     Venue is proper pursuant to 28 U.S.C. § 1391 because Thornton maintains its place of business in this district and the Underlying Lawsuit is pending in this district.

## FACTUAL BACKGROUND

### A.    The Special Master Fee Investigation

11.    The Underlying Lawsuit is a putative class action brought by the Arkansas Teacher Retirement System ("ATRS") against State Street Bank and Trust Company ("State Street"), among other defendants.  ATRS alleged that State Street, as a custodian of public pension funds in the United States, engaged in unfair and deceptive practices by overcharging clients for foreign currency exchange transactions.  ATRS was represented in the Underlying Lawsuit by Labaton Sucharow LLP ("Labaton"), as lead counsel, Thornton, and Lieff Cabraser Heimann & Bernstein, LLP ("Lieff").

12.    In July 2016, the parties in the Underlying Lawsuit filed a stipulation and agreement of settlement reflecting a class settlement amount for $300 million.  Labaton, as lead counsel, filed a motion for attorneys' fees, along with supporting declarations provided by Thornton and Lieff.  After a hearing in November 2016, the Court approved the settlement and awarded fees to class counsel in the amount of $74,541,250 and awarded $1,257,697.94 in expenses.

13.    Shortly after the Court's award of fees and expenses, Labaton filed a letter with the Court stating that, as a result of a media inquiry, errors had been discovered in certain written submissions from Labaton, Thornton, and Lieff supporting the motion for attorneys' fees.  In particular, the hours of certain staff attorneys had been included in the lodestar reports of more than one law firm, which had inflated the overall lodestar amount by more than $4 million.

14.    In February 2017, the Court advised the parties of a proposal to appoint a special master to investigate questions that had arisen as to the accuracy and reliability of information submitted by plaintiffs' counsel, including Thornton, on which the Court relied in awarding

attorneys' fees and expenses (the "February 2017 Order").  The Court noted the letter from

Labaton filed in November 2016 and a Boston Globe article, published shortly after, that raised

questions about rates actually paid to staff attorneys versus the higher rates submitted to the

Court in the motion for attorneys' fees.  The article also caused the Court to be concerned about

whether Michael Bradley, brother of Thornton managing partner Garrett Bradley, worked the

number of hours claimed on the case and whether his purported rate was accurate.

15.    In March 2017, the Court appointed a special master to investigate the matter and

prepare a report and recommendation for the Court.   The Court ordered the report to address:

> (a) the accuracy and reliability of the representations made by the parties in their
>
>       requests for awards of attorneys' fees and expenses, including but not limited
>
>       to whether counsel employed the correct legal standards and had a proper
>
>       factual basis for what was represented to be the lodestar for each firm;
>
> (b) the accuracy and reliability of the representations made in the November 2016
>
>       letter from Labaton;
>
> (c) the accuracy and reliability of the representations made by the parties
>
>       requesting service awards;
>
> (d) the reasonableness of the amounts of attorneys' fees, expenses, and service
>
>       awards previously ordered, and whether any or all of them should be reduced;
>
> (e) whether any misconduct occurred in connection with such awards; and, if so,
>
> (f) whether it should be sanctioned.

16.    After the conclusion of the investigation, the Court issued a 159-page

Memorandum and Order on February 27, 2020 (the "February 2020 Order").  *See* Underlying

Litigation, Dkt. 590.  The Court found that Labaton and Thornton made submissions in support

of their request for approximately $75,000,000 in attorneys' fees that were "replete" with false and misleading statements.  *Id.*, p. 17.  In addition, the Court concluded that both firms violated Federal Rule of Civil Procedure 11 and related Massachusetts Rules of Professional Conduct, justifying a reduction of the fee award.  *Id.*

17.     With respect to Thornton, the Court determined that a declaration of Thornton managing partner Garrett Bradley, submitted in support of the fee request (Underlying Action, Dkt. 104-16), was "untrue in virtually every respect." *Id.*, p. 88.  In particular, the Court found that:

    i.    The declaration falsely stated that Thornton employed certain staff attorneys and their associated billing rates.  In fact, the staff attorneys listed in an exhibit to the declaration by Garrett Bradley were not employed by Thornton, Thornton had no contemporaneous time records for them, and the billing rates attributed to each staff attorney were not Thornton's current billing rates for them.  Thornton worked exclusively on a contingent-fee basis and therefore the purported hourly rates were not "the same as [Thornton's] regular rates charged for their services" as the declaration stated.  Further, the rates cited by Thornton have largely not been accepted by other courts in complex class actions.  *Id.*, pp. 88-89.

    ii.   The declaration falsely stated that the regular hourly rate charged by Michael Bradley was $500, which in reality was substantially inflated.  *Id.*, p. 90.

18.     The Court found that certain factors contributed to the false statements, including that:

    i.    Thornton, Labaton, and Lieff had entered into an "unusual arrangement" that allowed Thornton to take credit for time spent by staff attorneys who were actually employed by the other firms.  The Court found that Thornton "demanded" the arrangement as "the best way to jack up the lo[de]star"  *Id.*, p. 90.  Labaton "acquiesced in this arrangement to maintain the goodwill of Thornton, particularly of Garrett Bradley, who was so adept at exploiting his political connections to get lucrative institutional clients for Labaton that Labaton made Bradley Of Counsel to the firm in January 2015."  *Id.*

    ii.    A Labaton attorney prepared a "template for the fee declarations" for use by Thornton to "fill[] in the blanks" concerning attorneys, hours, rates, and Thornton's contribution to the case.  *Id.*, pp. 91-93.  Garrett Bradley testified that he signed the declaration without reading it.  *Id.*, p. 93.  However, the Court also found that Garrett Bradley "knew that his declaration included false statements of fact after he read it in November 2016" but did not correct it.  *Id.*, p. 99.

19.     The Court held that the "repeated, egregious misconduct of counsel" "should not be ignored in the award of attorneys' fees."  *Id.*, p. 129.  The Court also lowered the rate of certain staff attorneys and Michael Bradley to calculate the lodestar.  Considering these factors, the Court found an overall award of $60 million to be reasonable and appropriate.  *Id.*, p. 144. The Court reduced Thornton's fee award by approximately $6.5 million to a total of $13,261,908.10.  *Id.*, p. 149.

20.     The Court also held that the initial and subsequent payments for the cost of the special master had been made from fees awarded to Labaton, Thornton, and Lieff, allocated by

agreement between the firms. *Id*., p. 152. The Court ordered that, based on the findings of

misconduct by Labaton and Thornton, further costs of the special master would be borne solely

by those firms, paid from their respective fee awards. *Id*., p. 152-53.

**B.      The Policies**

21.      Continental issued the 2016 Policy to Thornton for the **policy period** of

September 27, 2016 to September 27, 2017. *See* 2016 Policy, Declarations, Items 1 & 2. The

2016 Policy was issued to Thornton in Massachusetts.

22.      Continental issued the 2017 Policy to Thornton for the **policy period** of

September 27, 2017 to September 27, 2018. *See* 2017 Policy, Declarations, Items 1 & 2. The

2017 Policy was issued to Thornton in Massachusetts.

23.      The terms and conditions of the Policies relevant here are the same.

24.      Each of the Policies has a $10 million limit of liability for each **claim** and an

aggregate limit of liability of $10 million. Policies, Declarations, Item 3.

25.      Each of the Policies has a single Insuring Agreement, which provides:

> The **Company** agrees to pay on behalf of the **Insured** all sums in excess
> of the deductible that the **Insured** shall become legally obligated to pay as
> **damages** and **claim expenses** because of a **claim** . . . by reason of an act
> or omission in the performance of **legal services** by the **Insured**[.]

*See id*., Section I.A., as amended by Endorsement 1 in the 2017 Policy (the "Insuring

Agreement").

26.      Each of the Policies provides that "[t]he **Company** shall have the right and duty

to defend in the **Insured's** name and on the **Insured's** behalf a **claim** covered by this Policy

even if any of the allegations of the **claim** are groundless, false or fraudulent." *Id*., Section I.B.

27.     Each of the Policies defines the term "**claim**" in pertinent part to mean "a demand

. . . for money or services arising out of . . . an act or omission . . . in the rendering of or failure to

render **legal services**[.]"  *Id.*, Section III.  "**Legal Services**" in part means "those services . . .

performed by an **Insured** for others as a lawyer, arbitrator, mediator, other neutral fact finder, as

a notary public, or as a title agent, and such other customary and usual services provided by an

**Insured** in the course and scope of an attorney-client relationship."  *Id.*

28.     Each of the Policies defines **damages** to mean

> judgments, awards and settlements, provided any settlements are
> negotiated with the assistance and approval of the **Company**.

> **Damages** do not include:

> 1.     legal fees, costs and expenses paid or incurred or charged by the
>        **Insured**, no matter whether claimed as restitution of specific
>        funds, forfeiture, financial loss, set-off or otherwise, and injuries
>        that are a consequence of any of the foregoing;

> 2.     forfeitures, sanctions, penalties or criminal fines, whether pursuant
>        to law, statute, regulation or court rule, including but not limited to
>        awards under 18 U.S.C. §1961, et. seq., Federal Rules of Civil
>        Procedure 11 or 28 U.S.C. §1927 and state statutes, regulations,
>        rules or law so providing, and injuries that are a consequence of
>        any of the foregoing;

> 3.     injunctive or declaratory relief;

> 4.     matters deemed uninsurable;

> 5.     any amount for which the **Insured** is absolved from payment by
>        reason of any covenant, agreement or court order.

*Id.*, Section III.

29.     Each of the Policies includes an Intentional Acts Exclusion providing the Policy

do not apply:

to any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an **Insured** except that:

1.    this exclusion shall not apply to **personal injury**

2.    the **Company** shall provide the **Insured** with a defense of such **claim** unless or until the dishonest, fraudulent, criminal, or malicious act or omission has been determined by any trial verdict, court ruling, regulatory ruling or legal admission, whether appealed or not. Such defense will not waive any of the **Company's** rights under this Policy. Criminal proceedings are not covered under this Policy regardless of the allegations made against the **Insured**;

3.    this exclusion will not apply to any **Insured** who is not found to have committed such act or omission by any such trial verdict, court ruling, regulatory ruling or legal admission.

*Id.*, Section IV.A.

## C.    The Coverage Dispute

30.    On October 27, 2017, Thornton, through its broker, provided notice to Continental of the February 2017 Order as a potential **claim** under the 2017 Policy.

31.    The 2016 Policy was in effect when the February 2017 Order was entered, but Thornton tendered the Special Master Fee Investigation to Continental as a potential **claim** in October 2017 under the 2017 Policy, which incepted in September 2017.

32.    Continental denied coverage for the Special Master Fee Investigation on the basis that the 2017 Policy's Insuring Agreement had not been triggered given that the Special Master Fee Investigation sought only a determination of the reasonableness of legal fees submitted in the Underlying Litigation, and did not seek covered **damages** under the 2017 Policy; and because the Special Master Fee Investigation was not a **claim** by reason of an act or omission in the performance of **legal services**.

33.     After the issuance of the Court's February 2020 Order, Continental reiterated its

coverage denial and advised Thornton that the Court's findings triggered the 2017 Policy's

Intentional Acts Exclusion, which also precluded coverage.

34.     The parties continue to dispute whether the 2017 Policy provides coverage for the

Special Master Fee Investigation and Thornton may also contend that the 2016 Policy provides

coverage because that Policy was in effect when the February 2017 Order was entered.  Thornton

seeks fees paid to legal counsel to represent it in the Special Master Fee Investigation, as well as

the amounts the Court ordered to be deducted from its fee award to fund the Special Master Fee

Investigation.  Thornton incurred a portion of the fees it seeks to recover before it provided

notice to Continental of the Special Master Fee Investigation.

**D.     Thornton seeks to avoid this Court's jurisdiction**

35.     On November 25, 2020, Thornton filed suit in Illinois state court against

Continental seeking a declaration of coverage under the 2017 Policy.  *See Thornton Law Firm*

*LLP v. Continental Cas. Co*., No. 2020CH06970 (Ill. Cir. Ct. Cook County).

36.     This matter has no connection to Illinois other than Illinois being the state where

Continental is incorporated and has a principal place of business.

37.     The Policies were issued to Thornton in Massachusetts, where it is located, and

the Underlying Litigation is pending before this Court.

38.     As a result, this Court, rather than an Illinois court, is the appropriate forum for

litigating this dispute.

## COUNT I
**(For a declaration that Continental has no duty to defend or indemnify Thornton because the Special Master Fee Investigation is not a claim by reason of an act or omission in the performance of legal services)**

39.     Continental incorporates by reference and realleges the allegations set forth in Paragraphs 1 through 38 of this Complaint as though fully restated herein.

40.     The Insuring Agreement of each of the Policies provides that Continental will pay on behalf of the **Insured** sums that the **Insured** "shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** . . . by reason of an act or omission in the performance of **legal services**[.]"  Policies, Section I.A., as amended by Endorsement 1 in the 2017 Policy.

41.     Each of Policies defines the term "**claim**" in part to mean "a demand . . . for money or services arising out of . . . an act or omission . . . in the rendering of or failure to render **legal services**[.]"  *Id*., Section III.  Each of the Policies defines **legal services**, in relevant part, as: "those services . . . performed by an **Insured** for others as a lawyer, arbitrator, mediator, other neutral fact finder, as a notary public, or as a title agent, and such other customary and usual services provided by an **Insured** in the course and scope of an attorney-client relationship."  *Id.*

42.     The Special Master Fee Investigation does not fall within the scope of the Policies' Insuring Agreements because it is not a **claim** by reason of an act or omission in the performance of **legal services**.

43.     The Special Master Investigation involved an investigation by the Court and not a demand for money or services.  Moreover, the acts or omissions at issue in the Special Master Fee Investigation are not services performed by Thornton as a lawyer.  To the contrary, the

*Continental Casualty Company v.*
*Thornton Law Firm LLP*
Complaint for Declaratory Judgment
Page 13 of 18

Special Master Fee Investigation arose from the **Insured's** false and misleading submission regarding its billing rates and business practices in a declaration to the Court, which was submitted for the purpose of obtaining an award of fees for Thornton.  The Court held that the false and improper submission occurred because the **Insured** "demanded" a business arrangement with co-counsel whereby it would take credit for staff attorneys hired by other firms in order improperly to boost its lodestar request, and because a separate firm, Labaton, prepared a "template" for the declaration that the **Insured** filled in and did not thoroughly review before signing.  *See* February 2020 Order, pp. 90-93.

44.     The submission of the declaration in support of the motion for attorneys' fees also does not constitute the "rendering of" a **legal service** "for others."  Policies, Section III.  The motion for attorneys' fees was submitted by counsel for plaintiffs in the Underlying Lawsuit, solely for the benefit of the firms themselves and their recovery of attorneys' fees.  The Court held on numerous occasions that a petition to approve the settlement of a class action is an *ex parte* proceeding.  *See* February 2020 Order, pp. 5, 37, 85.  That is because "at that point the attorneys' interests in maximizing their compensation is <u>adverse to the interest of the class</u> in maximizing its recovery."  *Id*., p. 85 (emphasis added).  Thus, the Special Master Fee Investigation is not a **claim** by reason of the rendering of services as a lawyer "for others" as is expressly required to fall within the Policies' definition of **legal services**.

45.     As a result, the Policies do not provide coverage for the Special Master Fee Investigation.

## COUNT II
### (For a declaration that Continental has no duty to defend or indemnify Thornton because there is no possibility of an award of covered damages)

46.     Continental incorporates by reference and realleges the allegations set forth in Paragraphs 1 through 38 of this Complaint as though fully restated herein.

47.     The Insuring Agreement of each of the Policies provides that Continental will pay on behalf of the **Insured** sums that the **Insured** "shall become legally obligated to pay as **damages** and **claim expenses** because of a **claim** . . . by reason of an act or omission in the performance of **legal services**[.]"  Policies, Section I.A., as amended by Endorsement 1 in the 2017 Policy.

48.     Coverage is limited to a **claim** that alleges both covered "**damages**" *and* is "by reason of an act or omission in the performance of **legal services**."  In addition, the Policies specify that "[t]he **Company** shall have the right and duty to defend in the **Insured's** name and on the **Insured's** behalf a **claim** *covered by this Policy* even if any of the allegations of the **claim** are groundless, false or fraudulent."  *Id*., Section I.B. (italic emphasis added).  Thus, the duty to defend arises only where there is a **claim** potentially is covered by the Policies.

49.     There is no possibility of an award of covered **damages** in connection with the Special Master Fee Investigation.  The Special Master Fee Investigation involved an investigation of the validity of the **Insured's** fee submission to the Court, in order to verify the appropriateness of the Court's fee award to the **Insured**.  Any amounts returned or forfeited as a result of the Special Master Fee Investigation are expressly excluded from the Policies' definition of **damages** because they constitute "legal fees, costs and expenses paid or incurred or charged by the **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing"

or "forfeitures, sanctions, penalties or criminal fines, whether pursuant to law, statute, regulation or court rule, including but not limited to awards under 18 U.S.C. § 1961, et. seq., Federal Rules of Civil Procedure 11 or 28 U.S.C. § 1927 and state statutes, regulations, rules or law so providing, and injuries that are a consequence of any of the foregoing."  Policies, Section III. Moreover, it would violate public policy for Thornton to receive insurance coverage for the amount by which its fees were reduced by the Court because doing so would result in Thornton obtaining fees in excess of what the Court determined to be a reasonable fee.

50.     In addition, the Court ordered that Labaton and Thornton pay fees to compensate the special master specifically from the attorneys' fee award, which likewise would constitute "legal fees, costs and expenses paid or incurred or charged by the **Insured**, no matter whether claimed as restitution of specific funds, forfeiture, financial loss, set-off or otherwise, and injuries that are a consequence of any of the foregoing[.]"  Policies, Section III.  The amounts also constitute uncovered penalties for misconduct committed by the **Insured**.  *See* February 2020 Order, p. 152 ("It was their conduct [Labaton and Thornton] that prompted the appointment of the Master, and caused his investigation to become prolonged and more expensive.").

51.     As a result, there was no possibility of an award of covered **damages** in connection with the Special Master Fee Investigation and the Policies do not provide coverage for the Special Master Fee Investigation.

## COUNT THREE
**(For a declaration that Continental has no duty to defend or indemnify Thornton because the Policies' Intentional Acts Exclusion bars coverage)**

52.     Continental incorporates by reference and realleges the allegations set forth in Paragraphs 1 through 38 of this Complaint as though fully restated herein.

53.     Under the Intentional Acts Exclusion, the Policies do not apply "to any **claim** based on or arising out of any dishonest, fraudulent, criminal or malicious act or omission by an **Insured**[.]"  Policies, Section IV.A.

54.     The Court's February 2020 Order triggers the Intentional Acts Exclusion because the Court found that Thornton committed multiple dishonest acts.  In particular, both the special master and the Court concluded that Thornton managing partner Garrett Bradley "intentionally" violated Rule 11 and violated Massachusetts Rule of Professional Conduct 8.4(c), which states "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."  February 2020 Order, p. 99; *see also id.*, p. 64 ("the Master concluded that Garrett Bradley 'deliberately and intentionally' filed a false and misleading fee declaration[.]").

55.     The Court held that Mr. Bradley "repeatedly violated his duty to be candid with the court and to correct the misrepresentations he had made."  *Id.*, p. 100.  In addition, the Court noted that the erroneous fee petition was in part a result of an unusual arrangement with respect to the staff attorneys arising from Mr. Bradley's adept practice of "exploiting his political connections" to create business for Thornton.  *Id.*, p. 90.

56.     As a result, the Policies do not provide coverage for the Special Master Fee Investigation.

## <u>COUNT FOUR</u>
**(In the alternative, for a declaration that there is no coverage for any fees Thornton incurred in connection with the Special Master Fee Investigation before it provided notice to Continental)**

57.     Continental incorporates by reference and realleges the allegations set forth in Paragraphs 1 through 38 of this Complaint as though fully restated herein.

58.    On October 27, 2017, Thornton, through its broker, first provided notice to

Continental of the February 2017 Order.

59.    For the reasons stated in Counts I, II, and III, there is no coverage for the Special

Master Fee Investigation.  Alternatively, if coverage is determined not to be barred in full, there

is no coverage for any fees Thornton incurred in connection with the Special Master Fee

Investigation before it provided notice to Continental ("pre-tender fees").

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Continental respectfully prays that this Court:

a.    Enter judgment that the Policies do not provide coverage for the Special
      Master Fee Investigation on each of the grounds stated in Counts I, II, and
      III.

b.    Alternatively, enter judgment that Continental has no obligation to provide
      coverage for pretender fees.

c.    Award Continental its litigation costs and all such other and further relief
      as the Court may deem necessary or appropriate in the interests of justice.

*Continental Casualty Company v.*
*Thornton Law Firm LLP*
Complaint for Declaratory Judgment
Page 18 of 18

Respectfully submitted,

January 14, 2021                            */s/William L. Boesch*
                                           William L. Boesch (BBO No. 558742)
                                           SUGARMAN, ROGERS, BARSHAK & COHEN, P.C.
                                           101 Merrimac Street, Suite 900
                                           Boston, MA 02114
                                           (617) 227-3030
                                           boesch@sugarmanrogers.com

*Of Counsel:*                              *Counsel for Continental Casualty Company*
Richard A. Simpson
Kimberly A. Ashmore
Ashley L. Criss
(*pro hac applications to be filed*)
WILEY REIN LLP
1776 K Street NW
Washington, DC  20006
(202) 719-7000